EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

NORTH HILLS PASSAVANT
HOSPITAL, Defendant.

Civ. A. No. 75–890.

United States District Court,
W. D. Pennsylvania.

Aug. 4, 1978.

As Amended Aug. 21, 1978.

Ruth Weyand, E. E. O. C., Washington, D. C., James S. Bukes, E. E. O. C., Pittsburgh, Pa., for plaintiff.

Edward N. Stoner, II, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

SNYDER, District Judge.

This action was brought by the Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, seeking relief from the allegedly racially discriminatory acts of North Hills Passavant Hospital (Hospital).[1] The Hospital has

---

1. This matter has been before the United States Court of Appeals for the Third Circuit. Senior Judge Wallace S. Gourley of this Court, now deceased, granted summary judgment for the Defendant, finding that once a right to sue letter had been issued to the charging party, Arthur Pope, the only recourse left to the EEOC was to intervene and that their failure to do so for over three years, although within 10 months of failure of conciliation, would be the basis for sustaining the laches defense, particularly where the Title VII claim of the charging party had been dismissed and only his claim under the Civil Rights Act of 1866 remained (402 F.Supp. 877 (1975)). The Appellate Court held that even though Pope had settled his claim, the reasonable interpretation of Section 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1), was that the EEOC could sue, choose not to sue, or seek to intervene in a private suit and

now moved this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment on those EEOC claims for relief which arose prior to October 21, 1971, as being time barred. The EEOC seeks injunctive relief in the nature of (1) a reinstatement order for all Black employees who worked at the Hospital prior to its relocation in 1969, (2) an order requiring the Hospital to offer employment to all qualified Black applicants who may have been excluded by a 20 minute travel time rule at the new location, as well as persons who can establish by objective evidence that they would have applied for employment for which they were qualified but for an understanding that the Hospital was engaged in discriminatory hiring policies, and (3) monetary awards for back pay. This action is jurisdictionally premised upon charges of discrimination filed by Arthur W. Pope[2] on April 18, 1972.[3]

## I.

The Hospital was originally chartered through the efforts of the Reverend Doctor William Passavant in 1850 to provide health care "without distinction of color, creed or country". Prior to 1964, it operated a Hospital and Convalescent Home at Reed and Roberts Streets in Downtown Pittsburgh, Pennsylvania. In 1964, the Hospital was moved to a facility in the North Hills, a suburban location, and the Convalescent Home was closed on September 30, 1969.

The pretrial statement of the parties sharply focus their positions. The EEOC points out that the Hospital opened the new North Hills facility in 1964 with only a minimum number of employees and gradually staffed it while continuing to operate at the Reed and Roberts Street location. In staffing during this period, the Hospital gave preference to applicants for employment at the North Hills facility who lived within a 20 minute travel distance, thus eliminating employees who had worked at

the Downtown location. The percentage of the Hospital's Black employees was reduced from 90% at its old facility, to a total of 18.6% in 1967 and 1.3% in 1973. The EEOC calls our attention to a disparity between the 1973 percentage and the general 10% figure for Black employment in the Pittsburgh area in the health services industry, 16% for hospitals and 12% for health services industry nationally, and 14% for hospitals and 9% for health services in Pennsylvania. It charges that the Hospital, by moving from Downtown Pittsburgh to the White suburbs, "ran away from both its Black patients and its Black employees" (Plaintiff's Brief at 4), and the motivation was racial discrimination and/or the move had a racially discriminatory impact.

The Hospital contends it will demonstrate that its work force consists of representative numbers of minorities from the communities from which it draws its employees and that the basic explanation for the number of minority employees is the fact that there are so few minorities applying for employment, which can be explained by (1) the geographic location of the Hospital at a point distant from concentrations of minority populations in the Pittsburgh Metropolitan Area, (2) the difficulty of commuting to the Hospital by private car, (3) the lack of public transportation from concentrations of minority populations, and (4) availability of jobs at other hospitals more accessible to concentrations of minority populations. Further, the Hospital intends to establish that there is no requirement of the so-called "20 minute travel time", but that the rule is used only in comparing "two equally qualified applicants" and is applied only to those "services required on a short term basis in case of disaster or emergency."

The Hospital also argues here that as a matter of law the EEOC is barred from seeking any relief for acts by the Hospital more than 180 days before the filing of

---

that certainly the EEOC would not have settled on the terms agreed to by Pope, which gave no relief to the class he initially sought to represent. (544 F.2d 664 (1976)).

2. Pope's individual claim has been privately settled, and relief for him is not in issue.

3. See text infra at 336 for discussion of the filing date.

Arthur Pope's charges with the EEOC. Pope lodged charges with the EEOC on January 18, 1972, but, because he failed to file with the Pennsylvania Human Relations Commission, the EEOC deferred to the Pennsylvania Human Relations Commission until April 18, 1972. Thus, the date of filing is April 18, 1972, and the cut-off date for relief would be October 21, 1971.

## II.

The Hospital contends that *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), stands for the proposition that Black employees at the former location who were terminated prior to the applicable period of 180 days would now be barred from consideration "for a relief which arose prior" to the calculated time. In *Evans*, an airline flight attendant was forced to resign in 1968 due to the then existing no-marriage rule for flight attendants. In February, 1972, she was rehired as a flight attendant and United refused to give her credit for her past service although the no-marriage rule was declared to be violative of Title VII. In March, 1973, she filed a charge with the EEOC and the Supreme Court held her claim barred because she had failed to file a timely charge when she was forced to resign in 1968. The fact that the present seniority system gave effect to past discriminatory practices did not persuade the Court:

"Respondent is correct in pointing out that the seniority system gives present effect to a past act of discrimination. But United was entitled to treat that past act as lawful after respondent failed to file a charge of discrimination within the 90 days then allowed by § 706(d). A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." (431 U.S. at 558, 97 S.Ct. at 1889.)

Evans had made no allegation that the seniority system was not bona fide and was implemented for discriminatory purposes, so she had suffered no timely discriminatory act for which relief could be granted. *See Teamsters v. United States*, 431 U.S. 324, 348–55, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

The Hospital argues that assuming for the purpose of the instant Motion that the Black employees at the previous location were terminated due to their race and that Black applicants were denied employment prior to October 21, 1971, under *Evans* these acts would be unfortunate events of the past having no present legal significance.

The EEOC contends that *Evans* is inapposite, for there the employer had committed no unlawful employment practice during the four years preceding the filing of the charge. They point to the language in *Evans* (431 U.S. at 559, 97 S.Ct. at 1889):

"[I]n the case now before us we do not reach any remedy issue because respondent did not file a timely charge based on her 1968 separation and she has not alleged facts establishing a violation since she was rehired in 1972."

It urges that in the pending case there was a timely charge filed by Pope and that *Evans* did not reach the remedies that are available once there is a viable charge, citing *Acha v. Beame*, 570 F.2d 57 (2nd Cir. 1978), which held that *Evans* did not change the well settled practice of courts under Title VII to reach back and provide remedies for injuries incurred prior to 180 days preceding the charge. In *Acha*, the Second Circuit stated (at p. 65):

"A continuously maintained illegal employment policy may be the subject of a valid complaint until a specified number of days after the *last occurrence* of an instance of that policy. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 76–80, 478 F.2d 979, 986–90 (1973). *See also* 118 Cong.Rec. 7565 (March 6, 1972). Furthermore,

338

where an illegal policy is so maintained, *relief for injuries sustained even before the beginning of the limitations period is appropriate.*"

(Emphasis supplied)

In *Acha*, the issue was a determination of dates on which women had applied or would have applied for police jobs but for the discriminatory exclusion of women. The dates were to be used to give women police earlier seniority dates than they in fact were given and involved refusals to hire long before the 180 days preceding the filing of charges.

■ The Court agrees with the Hospital's position to the extent that *Evans* precludes the EEOC from seeking relief for any individual who did not suffer a discriminatory *act* within 180 days of the filing of Pope's charges with the EEOC. As to *remedies* available for individuals who did suffer timely injuries, however, this Court agrees with the Second Circuit that the limitation period does not apply. The objective of fashioning an appropriate remedy in Title VII cases is to formulate the most complete relief possible to eliminate the effects of discrimination. *Teamsters v. United States, supra*, 431 U.S. at 433, 97 S.Ct. 1843; *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). In doing so, the Court must balance the competing interests of innocent persons to determine a fair and workable remedy. *Teamsters, supra*, at 440, 97 S.Ct. 1843; *Lemon v. Kurtzman*, 411 U.S. 192, 200–01, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973). The only other limitations on such relief are that no individual may be awarded retroactive seniority to a date preceding the effective date of Title VII, *Teamsters, supra*, at 428, 97 S.Ct. 1843, and back pay cannot accrue for more than two years preceding the date of filing charges with the EEOC, 42 U.S.C. § 2000e–5(g).

■ Thus, an individual who has suffered from continuing acts of discrimination as part of a single pattern of discrimination is not restricted to a partial remedy which specifically addresses only those particular acts occurring within 180 days of the filing

of his charge. The Court has both the power and the duty to reach back to the origin of such a continuing discrimination, and to attempt to make the individual whole by providing, to the extent possible, full restitution from the invidious effects of the continuing discriminatory practice.

An appropriate Order will therefore be entered limiting the EEOC's proof to only those individuals who were fired, not hired, or failed to apply for employment since June 23, 1971 because of the Hospital's practice of racial discrimination, but without such time limitation on proof pertinent to remedies appropriate for these individuals.