**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**OPTICAL CABLE CORPORATION, Defendant.**

**No. 7:00CV00757.**

United States District Court, W.D. Virginia, Roanoke Division.

Aug. 2, 2001.

Victor M. Lawrence, Richard J. Mrizek, Equal Employment Opportunity Commission, Baltimore District Office, Baltimore, MD, Gerald S. Kiel, Stephen P. O'Rourke, Equal Employment Opportunity Commission, Baltimore, MD, Amy E. Garber, U.S. Equal Employment Opportunity Commission, Federal Building, Norfolk, VA, for plaintiff.

Thomas M. Winn, III, Thomas Richard Bagby, Bayard Easter Harris, Woods, Rogers & Hazelgrove, P.L.C., Roanoke, VA, for defendant.

### *MEMORANDUM OPINION*

Kiser, Senior District Judge.

This is a Title VII action brought by the EEOC against Optical Cable, a manufacturing company with facilities in the Roanoke area. The matter is before the Court on Defendant's Motion to Dismiss. Defendant cites the following grounds as bases for its Motion:

- The EEOC failed to engage in the good faith conciliation efforts required by Title VII;

- The EEOC Complaint includes individuals who did not suffer adverse employment actions within the limitations periods specified in Title VII;

- The EEOC's pattern or practice race discrimination counts fail to state a claim upon which relief can be granted; and

- The EEOC's impermissibly expanded the scope of its investigation when it moved beyond the allegations in the initial charge and looked into potential pattern or practice race and sex discrimination claims against Defendant.

The parties have briefed the issues, and oral argument was heard on February 28, 2001, thus ripening the matter for disposition. For the reasons stated below, I will DENY Defendant's Motion.

### I. BACKGROUND

The following narrative is drawn from the EEOC's complaint, from the EEOC's statement of the facts, and from both par-

ties' accounts of the procedural history of the case. When evaluating the sufficiency of the Complaint to state a claim, I will look only to the facts there alleged, and treat the factual allegations in the light most favorable to the EEOC, the non-moving party. *See, e.g., Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). Nevertheless, I will include materials from the briefs and attachments to flesh out the story, and to provide a factual backdrop to the procedural issues raised in the present Motion.

Defendant Optical Cable is a Roanoke manufacturing company that employs several people in routine factory jobs. Between June 1983 and July 1994, Defendant hired over 164 workers. Not one of them was black. The first black hired, Douglas Bonds, started work in July 1996. He worked for only 18 days prior to his discharge. On October 1, 1996, Bonds filed a charge of race discrimination with the EEOC.

When the EEOC investigated Bonds' Charge, it came to suspect that he was not the only victim of discrimination at Optical Cable. An examination of employment records [1] revealed a striking under-representation of black workers at Optical Cable. The EEOC also found that women were disproportionately placed in lower-paying positions. Optical Cable provided the EEOC with no legitimate nondiscriminatory reasons for this anomalous work force pattern. Consequently, on March 31, 1999, the EEOC issued a Letter of Determination stating that there was reasonable cause to believe: (1) Defendant had discriminated against Bonds, (2) Defendant had engaged in systematic race discrimination; and (3) Defendant had engaged in systematic sex discrimination.

The Letter of Determination included an invitation to Defendant to conciliate the matter. Between March 31, 1999, and August 17, 1999, the parties engaged in conciliation efforts during the course of which the Richmond EEOC office presented Defendant with a proposed Conciliation Agreement. Although the parties met for discussion, conciliation efforts were unavailing. On August 17, 1999—with the parties far apart—the EEOC issued a Notice of Failure of Conciliation.

After the EEOC issued this notice, Defendant replaced its previous counsel with the firm that now represents it. Upon being hired, replacement counsel wrote to the EEOC requesting that the Commission defer action until the new attorneys got up to speed on the case. The EEOC agreed, but noted that the conciliation period had ended, and that any negotiated settlement in the matter would have to be in the form of a consent decree settling the (as yet unfiled) Title VII lawsuit.

Throughout the end of 1999 and the beginning of 2000, the EEOC did, in fact, engage in further settlement talks with Defendant. These, too, were unsuccessful. Both sides claim that the other did not negotiate in good faith during this post-conciliation/pre-lawsuit period. The EEOC claims Optical Cable did not cooperate in meetings held in Baltimore in early 1999. Defendant, in turn, asserts that on September 20, 2000 the EEOC "inexplicably" notified Defendant that it would file the lawsuit, irrespective of the fact that the parties were still negotiating with each other.[2]

---

**1.** During this investigation period, there was a dispute regarding the proper scope of the EEOC's inquiry. The EEOC brought suit to enforce its subpoena of materials bearing on Defendant's recruitment and hiring practices.

Judge Turk granted this motion, and his decision was sustained on appeal.

**2.** The EEOC claimed that internal Commission policy required it to file suit prior to the

## II. CONCILIATION

■ Title VII requires the EEOC to attempt to resolve employment discrimination disputes by informal methods of conciliation prior to filing suit against an employer. 42 U.S.C. § 2000e–5(f). Defendant claims that the EEOC failed to engage in good faith efforts to conciliate the instant employment dispute inasmuch as it summarily broke off negotiations in September 2000 to file suit. The EEOC counters by asserting that it had undertaken conciliation efforts between March 31, 1999, and August 17, 1999, but that these efforts failed. Having issued its Notice of Failure of Conciliation on August 17, 1999, the EEOC claims it was under no further duty to engage in informal settlement talks.

I begin my analysis with the statutory text. Section 706 of the Civil Rights Act of 1964 provides, in pertinent part:

> If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge.

42 U.S.C. § 2000e–5(f). This provision was added during the 1972 amendments to Title VII. The Fourth Circuit has held that attempted conciliation is a precondition to the Commission's power to sue. *Patterson v. American Tobacco Co.*, 535 F.2d 257, 272 (4th Cir.1976); *EEOC v. Radiator Specialty Co.*, 610 F.2d 178, 183 (4th Cir. 1979). In *Radiator Specialty*, as here, the

EEOC included an invitation to conciliate in its Determination Letter finding reasonable cause. After touring the employer's facilities, the EEOC contacted it to set up a meeting. The defendant, however, indicated that such a meeting would be pointless. Thereafter, the EEOC notified the defendant that conciliation would be deemed to have failed unless, within five days, the defendant indicated it wished to resume the negotiations. The defendant did not so respond. The Fourth Circuit held that this evidence contradicted defendants claim that the Commission made no attempts to conciliate the dispute, and thus found in favor of the EEOC.

■ The cases further establish that courts should afford substantial deference to the EEOC's determination that conciliation efforts have failed. *EEOC v. Wayside World Corp.*, 646 F.Supp. 86, 89 (W.D.Va. 1986). In *Wayside* the EEOC brought an action on behalf of an employee who alleged that the defendant employer discriminated against her on the basis of her gender. The defendant alleged that the EEOC failed to "conciliate" the dispute because in negotiations the Commission adopted an all-or-nothing approach to the employee's claims. The court, per Judge Michael, rejected this argument, noting that Congress has given the EEOC the power to determine what Title VII requires by allowing them to determine what is and what is not an acceptable agreement. It held that absent an allegation of bad faith, the defendant could not complain that the EEOC failed to attempt to conciliate these matters.

In the present case, the EEOC has satisfied its obligation to conciliate in good faith with Defendant. To begin, there is

---

close of the 1999–2000 fiscal year. Although Defendant warned the EEOC that filing the suit would interfere with the parties' ability to

resolve the matter, the EEOC filed suit on September 27, 2000.

no question that conciliation efforts lasted longer than the statutorily mandated 30 days. The EEOC claims—and Defendant does not dispute—that such efforts transpired between March 31, 1999 and August 17, 1999. Further, Defendant has never alleged that the EEOC's Aug. 17, 1999 decision to break off conciliation efforts was made in bad faith. Defendant's former counsel evidently was unamenable to the informal terms of settlement suggested by the EEOC. Given the deference I must afford the EEOC's decision to break off conciliation efforts, it is clear that the EEOC satisfied its statutory duty to attempt conciliation prior to issuing its August 17, 1999 Notice of Failure of Conciliation. Had the EEOC filed suit on August 18, 1999, Defendant's conciliation argument would be transparently groundless.

The thrust of Defendant's argument, therefore, must be that even after the EEOC made a good-faith determination that conciliation efforts had failed, the Commission was obliged to reopen such talks when Defendant's new counsel indicated a willingness to resume conciliation efforts. Other than citing cases and legislative history that recite the general proposition that informal settlement of Title VII disputes is generally favored, Defendant provides no authority in support of its argument. Indeed, it is hard to see how the rule it proposes would advance the policy aim of encouraging informal settlement with the EEOC. Allowing defendants to blow hot and cold in the way that Defendant has in this case would enable them to draw out the process interminably. Defendants could drive a hard bargain during initial conciliation efforts, confident that if the EEOC then deems conciliation to have failed it still could force the EEOC to reopen conciliation by changing its tune and hiring new counsel.

As noted above, the EEOC discharged its obligations under § 2000e–5(f) when it issued its August 17, 1999 Notice of Failure of Conciliation. The Commission had no further statutory duty to negotiate with Defendant in good faith. Any later efforts made by the EEOC to resolve the case informally were supererogatory. Thus, even if—as Defendant claims—the Commission gave an arbitrary reason for cutting off settlement negotiations in September 2000, this fact does not bar the EEOC from bringing suit in federal court.[3] Accordingly, it does not support Defendant's present Motion to Dismiss.

### III. STATUTES OF LIMITATIONS

Defendant makes two different statute of limitations arguments. First, it contends that the EEOC complaint is untimely except as to those individuals who suffered adverse employment events that occurred after 180 days prior to the charge filed with EEOC.[4] It argues that

3. Defendant asserts that once the EEOC reopened informal settlement discussions it had a duty to act in good faith—a duty it violated when it arbitrarily terminated settlement negotiations and filed suit. However, Defendant cites no authority in support of this position, and I see no reason to punish the EEOC for resuming settlement talks when it was no statutory obligation to do so.

4. Defendant asserts that the 180–day, and not the 300–day, limit is appropriate in the present case because the EEOC did not defer its charges to the Virginia Council on Human Rights ("VCHR"). 42 U.S.C. § 2000e–5(c) and 5(e) (specifying 180–day limitation of actions on charges that are not first deferred to the appropriate state civil rights agency). In its brief in opposition, the EEOC argues that the 300–day limitation period applies, but does not directly address Defendant's contention that the EEOC's pattern or practice claims were not first deferred to the VCHR. Although I am inclined to agree with Defendant, my continuing violation analysis (see infra) moots the issue—at least for the time being. The EEOC has alleged a continuing

the "continuing violation" exception to the limitations periods does not apply in the instant case. Second, it claims that section 706(g) of the Civil Rights Act of 1964 limits back pay liability to that which has accrued within two years prior to the filing of the charge with EEOC.[5] I address each contention in turn.

### A. 180–Day Statute of Limitations

#### 1. Applicability

■ The EEOC has brought the present action in part as a pattern or practice suit under § 2000e–6 of Title VII. A threshold inquiry is whether the 180 day limit specified in § 2000e–5(e) applies to pattern or practice cases brought under § 2000e–6. Defendant points out that Section § 2000e–6(e) provides that EEOC pattern or practice suits "shall be conducted in accordance with the procedures set forth in section § 2000e–5 of this title." Section 2000e–5(e), in turn, states that:

[A] charge under this section shall be filed within *one hundred and eighty days* after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within *three hun-*

*dred days* after the alleged unlawful employment practice occurred

42 U.S.C. § 2000e–5(e) (emphasis added). Defendant contends, therefore, that this limitations provision applies to pattern or practice cases such as the one at bar. Noting that the race and sex pattern or practice claims were not deferred to the Virginia Council on Human Rights, *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435 (4th Cir.1998) (holding that Virginia Council on Human Rights was a "state deferral agency" within the meaning of Title VII and thus applying the 300–day limitations period, not the 180–day limitations period), Defendant maintains that the 180–day limitations period applies. As the pattern or practice claims were not contained in Bonds' original EEOC complaint, Defendant claims the filing date should be deemed to be the dates it first learned that the EEOC was expanding its investigation to encompass race-and gender-based pattern or practice discrimination. Thus, it contends that relief is not available for any black individual the EEOC contends was denied employment at any time prior to 180 days before June 12, 1997—the date on which the EEOC advised Optical Cable that it was expanding the scope of its investigation of Bonds' charge to include pattern or practice hiring discrimination on the basis of race. Likewise, Defendant contends that relief is unavailable for any woman whom the EEOC contends was discriminated against prior to 180 days before July 13, 1998—the date on which the EEOC advised Optical Cable that it was expanding its investigation to encom-

---

violation that extended much farther back in time than even the 300 days provided in the more lenient limitations period. Of course, Defendant may revisit the issue if during discovery the EEOC fails to establish facts that demonstrate the existence of a continuing violation extending back farther than 300 days prior to the date of filing the respective charges.

5. This is not, technically speaking, a statute of limitations issue. It is, rather, a limitation on damages. However, the limitations and damages issues are so closely interwoven that I believe it useful to discuss them in the same portion of the opinion.

pass sex discrimination in recruiting and hiring practices.

The Fourth Circuit has not ruled on whether the 180–day limitations period of § 2000e–5(e) applies to pattern or practice cases brought under § 2000e–6. However, the plain language of § 2000e–6(e) clearly supports Defendant's position. Rules regarding statutes of limitations are paradigmatic "procedures." Thus, a literal reading of the text would indicate that pattern or practice suits brought under § 2000e–6(e) "shall be conducted in accordance with the" 180–day limitations period set out in § 2000e–5(e). In *EEOC v. Sears, Roebuck & Co.*, 490 F.Supp. 1245, 1260 (M.D.Ala. 1980), the court adopted this approach, stating: "This Court is of the opinion that the clear language of § 2000e–6(e) makes the 'procedures' of § 2000e–5(e) applicable to pattern or practice suits and that the 180–day period set out in § 2000e–5(e) is one of those procedures." *See also EEOC v. North Hills Passavant*, 455 F.Supp. 335, 337–38 (W.D.Pa.1978) (adopting without explanation the 180–day limitations period of § 2000e–5(e) in pattern or practice suit).

The cases cited by the EEOC are not persuasive. In *EEOC v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 968 (7th Cir. 1996), the EEOC was not suing under a pattern or practice theory, so any comments the court made on the issue of whether the 180–day limitations period applied to pattern or practice cases was dicta. Likewise, in *United States v. Fresno Unified Sch. Dist.*, 592 F.2d 1088, 1096 n. 5 (9th Cir.1979), the issue of whether all the procedures listed in § 2000e–5(e) apply to pattern or practice cases was not properly before the court. Thus, the court's speculation that some of these procedures may not apply to suits brought under § 2000e–6(e) was plainly dicta.

In *EEOC v. Continental Oil Co.*, 393 F.Supp. 167, 170 (D.Colo.1975), also cited by the EEOC, the court analyzed a completely different 180–day period from the one at issue in this case. Under Title VII, if an individual files a claim with the EEOC, and the EEOC fails to bring suit against the employer within 180 days thereafter, the complaining employee may bring suit in federal court. The purpose of the provision is to enable individuals to vindicate their rights where there has been bureaucratic foot-dragging by the EEOC. *EEOC v. Cleveland Mills Co.*, 502 F.2d 153, 157 (4th Cir.1974) (quoting 118 Cong. Rec. S. 3462 (March 6, 1972) ("[Section 2000e–5(f)(1) ] is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission or Attorney General does not act with due diligence and speed.")). In *Continental Oil*, the defendant argued that this provision *authorizing* an individual to bring suit after 180 days also *barred* the EEOC from bringing suit after that period. The court rejected this argument, and held that § 2000e–5(f)(1) does not act as a limitations period within which the EEOC must file suit. *Id.* (citing *Cleveland Mills*, 502 F.2d at 159 ("We thus conclude that the 180–day period contained in 42 U.S.C.A. § 2000e–5(f)(1) is referable to the beginning of the time within which an aggrieved party may file a private action, but that its expiration does not finally terminate the Commission's right of action.")). The opinion did not even mention the *separate* 180–day limitations provision of § 2000e–5(e)—the provision at issue in the present case-that specifies the time within which an individual must file a charge with the EEOC. The opinion, therefore, is completely irrelevant.

The only decision that significantly advances the EEOC's position is *EEOC v. Mitsubishi Motor Mfg. of America, Inc.*, 990 F.Supp. 1059 (C.D.Ill.1998). There, the court directly confronted the issue

whether § 2000e–6(e) mandates use of the 180–and 300–day limitations periods of § 2000e–5(e) in pattern and practice cases. The court noted the awkwardness of using these limitations periods in pattern or practice cases brought by the EEOC:

> By its nature, the Commissioner's charge alleging a pattern or practice of sexual harassment is not filed within 300 days of any particular incident of sexual harassment, because it is not based on an individual charge, but rather on the evidence gathered over a course of time showing a pattern of harassment against many individuals. As a result, there is no way for a court to determine if the Commissioner's charge is "timely." The date picked for the filing of a Commissioner's charge is, most likely, when the Commissioner has some reason to suspect a pattern or practice of systemic discrimination by an employer. Presumably, the pattern or practice of discrimination, itself, as alleged, has continued over a period of time and most likely for more than 300 days prior to the filing of the Commissioner's charge.

*Id.* at 1087 (footnote and citations omitted). Accordingly, the court refused to apply the 300–day limitations period specified in § 2000e–5(e).

While I agree with the *Mitsubishi* court that the 180 and 300–day statutes of limitations found in § 2000e–5(e) are not particularly well-adapted to pattern or practice cases, I do not think the problems are insurmountable. Determining the date of "filing" for the purposes of § 2000e–5(e)'s limitations periods appears to me no more difficult than determining the date of "filing" for § 2000e–5(f)'s two-year cap on backpay awards (see discussion *infra*). The Fourth Circuit has not hesitated to use the date the EEOC notifies the defendant that it is commencing a pattern or practice case against them as the date of "filing of a charge" for purposes of calculating the two year backpay period of § 2000e–5(g). *EEOC v. General Elec. Co.,* 532 F.2d 359, 371 (4th Cir.1976). I do not see why a determination of the date by which "a charge ... shall be filed" under § 2000e–5(e) should be any different.

▪ Bound as I am by the plain language of the statute, I conclude that the 180–day limitations period of § 2000e–5(e) applies in this case. In the absence of a better alternative, I find that the "filing" dates for the race and gender pattern or practice charges were the dates on which the EEOC notified Defendant that it was expanding its investigation to encompass these charges. *EEOC v. General Electric Co.,* 532 F.2d 359, 371 (4th Cir.1976).

### 2. Continuing Violation

The EEOC argues that even if the 180–and 300–day statutes of limitations apply to its failure-to-hire claims, Defendant's enduring policy of race and sex discrimination constituted a "continuing violation," and thus the present suit is timely. In *Beall v. Abbott Laboratories,* 130 F.3d 614, 620 (4th Cir.1997), the Fourth Circuit recognized the doctrine of continuing violation stating, "Incidents outside of the statutory window are time-barred unless they can be related to a timely incident as a 'series of separate but related acts' amounting to a continuing violation." The court did not undertake to elaborate on how one determines the requirement of "series of separate but related acts." But in *Berry v. Board of Supervisors,* 715 F.2d 971 (5th Cir.1983), the Fifth Circuit did address the contours of the continuing violation doctrine. After noting that the origin and theoretical basis of the doctrine are unclear, the court stated, "Where the plaintiff has alleged a continuing discriminatory policy, courts have differed over whether the existence of the policy itself constitutes

a continuing violation, making a suit timely if the policy remains in effect during the actionable period, or whether there must be some actual application of it to the plaintiff within the period." p. 978. After recognizing that the courts have struggled to formulate a clear standard for establishing a continuing violation, the court set forth some parameters for making the determination. It said,

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a bi-weekly pay check) or more in the nature of an isolated work assignment or employment decision. The third factor, perhaps of most importance, is degree of permanence. Does the act have a degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights . . .

P. 981. This test has been adopted by the Third, Tenth and Eleventh Circuits. The approach has also been adopted by this Court in *Douglas v. Dabney S. Lancaster Community College*, 990 F.Supp. 447 (W.D.Va.1997).

The EEOC asserts that the continuing violation doctrine should be applied in this case and in support of its argument relies primarily on *EEOC v. Peterson, Howell & Heather, Inc.*, 702 F.Supp. 1213 (D.Md. 1989) and *EEOC v. Chicago Miniature Lamp Works*, 640 F.Supp. 1291 (N.D.Ill. 1986).

In *Peterson*, the EEOC brought suit against an employer alleging widespread sex and race discrimination in recruitment, hiring, promotion, and wages. Defendant argued that § 2000e–5(e) barred any remedy for individuals who suffered discrimination as a result of personnel decisions that occurred prior to 180 days before the original charge was filed with the EEOC. Although some individuals in the plaintiff class met this criterion, not all did. In response, the EEOC claimed that those individuals who did not suffer adverse employment action after the cut-off date could still piggy-back on the timely claims of those who had done so, because defendant's discriminatory employment practices constituted a "continuing violation." The court agreed. It held that:

> if the EEOC can prove that the defendants engaged in a continuous course of discrimination against blacks and females which extended into the 180–day limitations period, relief will be afforded not only to those who suffered discrimination within the 180–day period, *but to those who suffered discrimination before the 180–day period.*

*Id.* at 1226 (emphasis added).

In *Chicago Miniature Lamp Works*, the court confronted similar facts. The EEOC alleged a continuing pattern of discriminatory action, and the defendant claimed that only those individuals who suffered discrimination during the 300–day statutory period could recover under a continuing violation theory. It arrived at a conclusion identical to the court in *Peterson*:

> Because Chicago Miniature engaged in a continuing course of discrimination against black persons, even persons who suffered discrimination during the earlier part of that continuous period (and not just within the 300 days) can become class members entitled to relief.

*Id.* at 1296.

In reply, Defendant cites cases that it claims show that it is "well established" that failure-to-hire claims such as the one the EEOC makes in the present case "are not susceptible to a 'continuing violation' theory." It claims that this conclusion follows from the Supreme Court decision in

*United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). There, a female married flight attendant was fired in 1968 under the airline's "no marriage" rule. Although eventually reinstated, the time she lost during her dismissal caused her to be promoted less rapidly under the airline's (otherwise gender neutral) seniority system. She brought suit in 1973, alleging that the airline continued to discriminate against her by basing her seniority on her reinstatement date rather than her earlier period of employment. The Court held her claim to be untimely, reasoning that her injury was simply the present effect of past discrimination, *not* the consequence of a continuing violation. In addition to *Evans,* the Defendant relies on *EEOC v. North Hills Passavant,* 455 F.Supp. 335 (W.D.Pa.1978) and *EEOC v. Crown Liquors of Broward, Inc.,* 503 F.Supp. 330 (S.D.Fla.) for the proposition that—even in pattern or practice cases—Title VII requires *each individual claiming relief* under a continuing violation theory to allege a discriminatory act against him within the statutory period.

In *North Hills Passavant,* the EEOC brought suit seeking relief for the allegedly discriminatory acts of defendant hospital. 455 F.Supp. at 337. The defendant argued that only those employees who suffered a discriminatory act within 180 days prior to the filing of the original charge were eligible to recover under the suit. The court agreed, noting that *"Evans* precludes the EEOC from seeking relief for any individual who did not suffer a discriminatory Act within 180 days of the filing of [the original claimant's] charge with the EEOC." *Id.* at 338. Similarly, in *Crown Liquors,* the court held that § 2000e–5(e) "operates to exclude all persons whose claims accrued prior to the 180–day period before the filing of the first charge." 503 F.Supp. at 335–36. It held

that individual claims concerning the discrete acts of hiring and firing did not constitute "continuing violations" and thus could not toll the statutory period under that theory.

Using the *Berry* parameters in determining a continuing violation *vel non,* when, if ever, would the 180–300–day statute of limitations apply to a continuing violation? By definition, a pattern and practice of discrimination will always constitute a continuing violation. Thus, we have a statute of limitations that applies to pattern and practice cases, but because of the court-made continuing violation doctrine, the statute is nullified. The cases relied on by the parties do not address this anomaly; however, the case of *Domingo v. New England Fish Co.,* 727 F.2d 1429 (9th Cir.1984), does.

*Domingo* was a class action claiming racially discriminatory treatment of workers at the defendant's fish cannery. The plaintiff argued that the class should include those employees who suffered discriminatory treatment outside of the 300–day limitation period. Relying on *Evans,* the court said, "Domingo's argument, however, would effectively read the limitation period out of the statute, which we cannot do." p. 1443. After discussing the *Evans* case, the court went on to state, "It follows that, as a prerequisite to obtaining relief, each class member must demonstrate by fact of employment or otherwise, that he or she had been discriminated against during the limitation period or was a member of a group exposed to discrimination during that time." p. 1443. From an analytical standpoint, it is hard to take issue with the rationale of the *Domingo* court. It seems obvious that if the continuing violation doctrine is applied, those members of the class must have suffered an adverse employment action within the given time

period or else the limitation in the statute would be meaningless.

■ At this stage of the law suit, however, I agree with the position of the EEOC that it is premature to decide if and how the continuing violation doctrine should be applied in this case. The parties have neither briefed nor argued the issue of continuing violation nullifying the limitation requirement in § 2000e–5(e). Nor has discovery been developed to the extent that the putative class can be identified. Consequently, I will deny the Defendant's motion on this ground.

### B. *Two Year Cap on Back Pay*

■ Defendant points out that Section § 2000e–6(e) provides that EEOC pattern or practice suits "shall be conducted in accordance with the procedures set forth in section § 2000e–5 of this title." Section 2000e–5(g), in turn, limits back-pay recovery to two years prior to its notification of the charges of discrimination. Courts have held that this restriction applies to pattern or practice cases brought under § 2000e–6. *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918, 933–34 (10th Cir.1979); see also Lindemann & Gross, *Employment Discrimination Law* 1788. Although the EEOC admits that § 2000e–5(g) limits back-pay recovery to two years, it claims that there is an exception to this rule for pattern or practice cases and for cases where there has been a "continuing violation." However, it cites no authority supporting this position.

■ The cases that have directly addressed this issue have concluded that the two year cap may not be extended further back in time, even when there is a continuing violation.[6] Thus, in *Berry v. Board of Supervisors,* 715 F.2d 971, the court noted that even in cases where a continuing violation entitles plaintiff to recover for "portions of the persistent process of illegal discrimination that antedated the limitations period" this recovery is "limited to a period of two years prior to the filing of a charge with the EEOC." *Id.* at 980. Nevertheless, an employer's back-pay liability may be based upon wrongful *acts* that antedate the two-year period (and which form part of a continuing violation) provided the *injury* from such acts occurs within the two year back-pay accrual period. *EEOC v. O & G Spring and Wire Forms Specialty Co.,* 38 F.3d 872, 880 (7th Cir. 1994); *Crawford v. Western Elec. Co.,* 614 F.2d 1300, 1309 (5th Cir.1980). *See also* Lindemann & Gross, *Employment Discrimination Law* 1788 ("Where a true continuing violation exists, § 706(g) [§ 2000e–5(g)] does not shield a defendant from back pay liability simply because the defendant's first discriminatory act occurred outside the two-year period; rather, a court is permitted to 'take[ ] into account the effects' occurring within the back-pay accrual period that stemmed from acts of discrimination occurring earlier.")

Again, however, the facts have not been developed sufficiently in this case to identify either the actions giving rise to Defendant's liability or the consequences thereof that occurred within the two year limitation established by § 2000e–5(g).[7]  Accord-

---

6. Given that the limit on backpay was intended as a backstop to check the limitless operation of the continuing violation theory in pattern or practice cases (see discussion of legislative history *supra*), it would be especially perverse to use the continuing violation doctrine as a means to circumvent the cap on backpay.

7. I note in passing that with respect to the pattern or practice claims brought by the EEOC, the date from which the two year back-pay period is to be measured is the date the EEOC notified defendant that it was expanding its investigation to include those claims. *General Electric,* 532 F.2d at 371.

ingly, it would be premature to grant Defendant's Motion to Dismiss on this basis.

## IV. FAILURE TO STATE A CLAIM

█ In ¶ 7(b) of the Complaint, the EEOC contends that Defendant engaged in a pattern or practice of racially discriminatory recruiting and hiring employees inasmuch as it "Maintain[ed] a workforce that under-represent[ed] Blacks in the general work force, and under-represents Blacks in certain specific job categories" and "Us[ed] recruiting methods such as word-of-mouth recruiting which perpetuate[d] the under-representation of Blacks." The wording of ¶ 7(b) suggests that the disparity and word-of-mouth recruiting are themselves the problem, rather than evidence and effects of Defendant's underlying discriminatory practices.

Defendant argues that, inasmuch as the EEOC's claim for pattern and practice race discrimination complains simply about racial disparities in the workforce and word-of-mouth recruiting, and nothing more, it fails to state a claim for a violation of Title VII. It contends that racial disparities, *per se*, do not violate Title VII. Similarly, it claims that word-of-mouth recruiting, *per se*, does not violate Title VII. Thus, it claims that the EEOC's Complaint fails to state a claim for pattern and practice racial discrimination.

I think that Defendant's argument is without merit. Although the Complaint fails to mention in ¶ 7 that the statistical anomalies and word-of-mouth recruiting were *evidence* of underlying discriminatory policies that violated Title VII, the import is clear. Moreover, in the "Nature of the Action" preamble to its Complaint, the EEOC specifically contends that "Optical Cable Corporation discriminated against Blacks as a class *by maintaining a pattern or practice of racially discriminatory hiring practices that adversely affected the ability of Blacks to become employed* by the company." (Emphasis added). Although not a model of clarity and precision, the Complaint thus adequately states a Title VII pattern or practice claim.

## V. SCOPE OF THE ACTION

█ The last argument that Defendant makes in support of its Motion to Dismiss is that the EEOC impermissibly expanded its investigation beyond the scope of Douglas Bonds' initial Charge of race discrimination to encompass pattern and practice race and sex discrimination. Thus, even though these later allegations were contained in the cause determination and conciliation attempts, Defendant argues that the EEOC was required to file separate formal Charges as to each of these pattern and practice claims. I think this claim is groundless.

In support of its argument, Defendant quotes a passage from *EEOC v. Bailey Co.*, 563 F.2d 439, 451 (6th Cir.1977). There, the Sixth Circuit criticized and refused to adopt a rule wherein the EEOC could expand its investigation of an individual complaint to all types of discrimination practiced by the employer, regardless of whether they were similar to the kinds of discrimination the original charging party suffered. Instead, it prohibited the EEOC from litigating issues that were not "like-and-related" to the initial charge of discrimination. However, commentators have observed that the Fourth Circuit follows a much more liberal rule regarding the expansion of EEOC investigations than does the Sixth Circuit. Lindemann and Grossman, *Employment Discrimination Law* 1503. To its credit, Defendant cites the controlling case: the Fourth Circuit opinion in *EEOC v. General Elec. Co.*, 532 F.2d 359 (4th Cir.1976). There, the court held that the EEOC could bring suit on all grounds of discrimination that "grow natu-

rally out of the investigation of the initial charge," provided such counts were included in the reasonable cause determination and the conciliation process. In strident language that I think completely undermines Defendant's arguments on this issue, the Fourth Circuit declared:

We are of the opinion that both the District Court and the defendant attach too much importance to the charges as filed and fail to give proper effect to the Amendments of 1972 to Title VII. While it is true "the EEOC is without jurisdiction to proceed (in any case) in the absence of a valid charge, * * * (t)he purpose of the charge under section 706 is only to initiate the EEOC investigation," to "trigger the investigatory and conciliatory procedures of the EEOC." The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom, or the reasonable cause determination that may be rested on that investigation. *The charge merely provides the EEOC with "a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices;" and that investigation may well "disclose, as in this instance, illegal practices other than those listed in the charge" and provide a basis for a reasonable cause determination with respect to those practices.* The charge has been described, also, "as a starting point" for a reasonable investigation by the Commission, which may then "include in its deliberations (and base its determinations on) all facts developed in the course of a reasonable investigation of that charge * * *." (Italics added) The EEOC has the right during the investigation to compel the production of any material or evidence that has relevancy to any claim made in the charge. *If the EEOC uncovers during that investigation facts which support a charge of another discrimination than that in the filed charge, it is neither obliged to cast a blind eye over such discrimination nor to sever those facts and the discrimination so shown from the investigation in process and file a Commissioner's charge thereon, thereby beginning again a repetitive investigation of the same facts already developed in the ongoing investigation.* To cast a blanket over such facts in the ongoing proceedings would be a violation of the EEOC's statutory obligation in the area of employment discrimination. *To require a new charge based on those facts and to begin again the administrative process thereon, would result in an inexcusable waste of valuable administrative resources and an intolerable delay in the enforcement of rights which require a "timely and effective remedy." That procedure ... "would serve no purpose other than the creation of an additional procedural technicality."* It would be simply a useless exercise in technical nicety. So long as the new discrimination arises out of the reasonable investigation of the charge filed, it can be the subject of a "reasonable cause" determination, to be followed by an offer by the Commission of conciliation, and, if conciliation fails, by a civil suit, without the filing of a new charge on such claim of discrimination. In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act.

*Id.* at 364–65. The class-based allegations in this case grew naturally out of the EEOC's investigation of Bond's Charge and were included in the Letter of Determination of reasonable cause. Defendant does not contend that these issues were not discussed in conciliation efforts. Thus, the prerequisites of the *General Electric* analysis have been met.

Defendant attempts to distinguish *General Electric* by arguing that in that case there was a common "root source" that connected the race discrimination alleged in the Charge with the sex discrimination that was the subject of the EEOC's expanded investigation. Specifically, the basis of both the sex and race discrimination lay in an employment test that discriminated against both groups. In the present case, on the other hand, there was no such "root source." The nature of the class-based allegations differed from those contained in Bond's original Charge.

This, I think, is a distinction without a difference. Clearly, having a common "root source" is a sufficient condition for finding that the EEOC "uncover[ed] during that investigation facts which support a charge of another discrimination than that in the filed charge ..." However, it is not (as Defendant suggests) a necessary condition. The EEOC could naturally uncover during its investigation evidence of discrimination unrelated to the kind alleged in the charge it investigates. This appears to have been the case here. Upon investigating Bonds' claim, the EEOC discovered the anomalous hiring patterns that formed the basis for its class-based race and gender discrimination claims. Thus, even though Bonds' charge alleged a form of discrimination that differed from the class-based pattern and practice claims, the EEOC's investigation of those latter claims "gr[ew] naturally out of the investigation of the initial charge." Thus, under

the reasoning of *General Electric,* the EEOC need not have filed additional Charges alleging the class based pattern and practice discrimination.

## VI.   CONCLUSION

For the foregoing reasons, I am of the opinion that Defendant's Motion to Dismiss should be DENIED. The clerk is directed to send a copy of this Memorandum Opinion to all counsel of record. An appropriate Order shall this day issue.