UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DESIREE WILKINSON,
            *Plaintiff-Appellant,*

v.

DONALD H. RUMSFELD, Secretary,
Department of Defense (Defense
Finance & Accounting Service),
            *Defendant-Appellee.*

No. 03-1808

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CA-02-359-2)

Argued: February 24, 2004

Decided: June 7, 2004

Before WILLIAMS and MICHAEL, Circuit Judges, and
William D. QUARLES, Jr., United States District Judge
for the District of Maryland, sitting by designation.

Reversed and remanded by unpublished opinion. Judge Quarles wrote
the opinion, in which Judge Williams and Judge Michael joined.

## COUNSEL

**ARGUED:** Michael Patrick Deeds, KESTELL & ASSOCIATES,
Washington, D.C., for Appellant. Michael Anson Rhine, Assistant
United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:**

Paul J. McNulty, United States Attorney, Norfolk, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

QUARLES, District Judge:

In this appeal, we consider whether Plaintiff Desiree Wilkinson failed to timely seek EEO counseling regarding her hostile environment claim under the Rehabilitation Act of 1973, Title 29 U.S.C. § 791, *et seq.*, as amended.

### I.

Desiree Wilkinson began to work for the Defense Finance and Accounting Service ("DFAS"), a federal employer, in 1982. (J.A. at 231, ¶ 2.) In 1984, a tractor trailer ran over her car at the DFAS facility; the event caused her severe depression, panic attacks, and post-traumatic stress. (J.A. at 231, ¶ 3.)

In 1987, Wilkinson asked to be approved for advanced sick leave to undergo psychological treatment. (J.A. at 231, ¶ 5.) Ms. Frankie Brinkley, who was then the Deputy Director of DFAS, became aware of Wilkinson's condition because of this leave request. (J.A. at 231, ¶ 5.) Brinkley became Director of DFAS in January 1995; Joseph Saunders replaced her as Deputy Director shortly afterwards. (J.A. at 231, ¶ 5, 104-05.) About a month after Saunders took over the deputy position, Brinkley advised him to stay away from Wilkinson because "she can be troublesome and has some mental problems." (J.A. at 284-85.) Brinkley also told John Turner that he would not be considered for promotion if he continued to associate with Wilkinson. (J.A. at 262-63.)

Wilkinson's co-workers and supervisors began to avoid her, did not greet her in the hallway, and were less cooperative and helpful to her during the work day. (J.A. at 231-32, ¶ 6.) These experiences left Wilkinson feeling depressed, shunned, and isolated. *Id.* One of Wilkinson's supervisors, Clare Britcher, would rush Wilkinson out of her office when she came in to discuss work; this made it difficult for Wilkinson to perform some of her assignments. (J.A. at 233, ¶ 10.) Wilkinson experienced disabling anxiety and panic feelings as a result. *Id.*

During September and October 1996, Wilkinson's co-workers and supervisors continued to shun her because of Brinkley's order not to associate with her. (J.A. at 233, ¶ 12.) In one incident, 15 to 20 co-workers left an area just outside the building as soon as Wilkinson joined them. *Id.* On September 30, 1996, Britcher told Wilkinson that she had avoided her because shortly after she began working at DFAS, Brinkley told her to keep her distance from Wilkinson and to watch her. (J.A. at 201-02) (Britcher Depo.). Wilkinson sought EEO counseling on October 3, 1996 and filed her formal EEO complaint on January 17, 1997. (J.A. at 125-26.)

On November 10, 1999, the EEOC found that Wilkinson had not proven discrimination by a preponderance of the evidence. (J.A. at 316, 318.) The EEOC found that Brinkley was "abusive to virtually everyone with whom she works" and had not treated Wilkinson differently because of her disability. (J.A. at 331-32.)

Wilkinson filed an action in the United States District Court for the Eastern District of Virginia, at Norfolk, on May 17, 2002. On January 16, 2003, defendant filed a motion to dismiss for lack of subject matter jurisdiction on the basis that Wilkinson had failed to seek EEO counseling within 45 days of a discriminatory event. (J.A. at 18, 28.) After that motion was denied, the government filed a motion for summary judgment on the same basis. (J.A. at 158.) On June 10, 2003, the District Court granted summary judgment for the defendant after finding that only the September 30, 1996 conversation had occurred within the 45-day period. (J.A. at 358, 364-66.) The District Court determined that the September 30 conversation was not part of the alleged hostile environment and that EEO counseling had not been timely sought. *Id.* This appeal followed.

## II.

The District Court's grant of summary judgment is reviewed de novo and the nonmovant is entitled to all reasonable inferences in her favor. *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002). Summary judgment may be granted when the moving party shows that there is no genuine issue of material fact, and it is legally entitled to judgment. *Kitchen v. Upshaw*, 286 F.3d 179, 182 (4th Cir. 2002), *citing* Fed.R.Civ.P. 56(c). If the moving party would not bear the burden of proof at trial, its initial burden is met by "pointing out" that the nonmoving party has not made a sufficient showing on an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party would bear the burden of proof at trial, it discharges its initial burden by offering evidence that, if undisputed, would entitle it to judgment. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 614 (4th Cir. 1999).

After the initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor. *Celotex,* 477 U.S. at 323-25, *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir. 2002).

Rehabilitation Act claims against the federal government must comply with the same administrative procedures that govern federal employee Title VII claims. *Doe v. Garrett,* 903 F.2d 1455, 1460-61 (11th Cir. 1990)(internal citations omitted); 29 C.F.R. 1614.105 (45-day period). Accordingly, administrative exhaustion "is a condition precedent to suit that functions like a statute of limitations . . ." *Mosley v. Pena*, 100 F.3d 1515, 1518 (10th Cir. 1996); *see also Holley v. Dep't of Veterans Affairs,* 165 F.3d 244, 246 (3d Cir. 1999). In determining the timeliness of Wilkinson's counseling request, the District Court excluded from consideration evidence that it determined was either not fairly raised by Wilkinson's formal complaint or happened earlier than 45 days before that request. (J.A. at 364-66 & n. 4.)

Under 29 C.F.R. § 1614.106(c), a complaint need only "sufficiently . . . identify [the plaintiff] and the agency and . . . describe generally

the action(s) or practice(s) that form the basis of the complaint." *Id.* The January 17, 1997 complaint describes the September 30 conversation with Britcher and an undated allegation that:

> "Top Management [Frankie Brinkley] has informed her directors and other supervisors that they are not to associate[ ] or communicate with me. This is with the threat of denied promotions. The known fear of retribution from Frankie Brinkley, unfortunately continues to perpetuate this behavior throughout OPLOC Norfolk. This pattern of conduct by Frankie Brinkley has continued to cause emotional distress to me, having to work in a hostile environment, isolated with fear of retaliation."

(J.A. at 127.)

This complaint adequately puts the agency on notice to investigate more than the September 30 conversation; it references a "pattern of conduct" that has created an isolating, hostile work environment. *See Stocke v. Marsh*, 912 F.2d 381, 383 (9th Cir. 1990)(complaint sufficiently stated discriminatory actions when it noted "complaints of repeated unwanted verbal and physical sexual advances by" three employees). The EEO investigator and the EEOC understood that employee shunning was part of Wilkinson's complaint. The report regarding the EEO investigation states:

> "The issue accepted for investigation is whether the Complainant was discriminated against, by reason of her handicap and as an act of reprisal, in that Ms. Frankie Brinkley . . . advised her managers, supervisors and co-workers not to associate with [Wilkinson], thus creating a hostile work environment."

(J.A. at 237.)

The EEOC decision addressed both the shunning and the September 30 conversation. (J.A. at 328)(finding shunning incidents "trivial" and unrelated to Wilkinson's disability); (J.A. at 325)(September 30 meeting in which Brinkley told supervisors to avoid Wilkinson "could

not be substantiated"). Thus, the agency itself investigated the type of activities that the District Court refused to consider. *Id.*

Wilkinson stated that during the 45-day period before she sought counseling "co-workers and supervisors continued to shun me on a daily or near daily basis." (J.A. at 234, ¶ 12.) Further, Wilkinson indicated that the incident in which 15 to 20 people left an area when she arrived occurred within the 45-day period before she sought counseling. *Id.*

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), noted that unlike other discriminatory practices, a hostile environment claim involves one unlawful employment practice that can be comprised of a series of separate incidents. *Id.* As long as one component incident occurred within the applicable limitations period, every component incident of the hostile environment may be considered for purposes of liability regardless of when those events occurred. *Id.* at 117-18.[1]

There is evidence that the break-time, and other, shunning incidents were components of one hostile environment that occurred within the 45-day period prior to when Wilkinson sought EEO counseling. (J.A. at 234, ¶ 12)(shunning incidents within 45-day period); (J.A. at 284-85)(Saunders' testimony that Brinkley told him, around when he first started working for her, something to the effect of "Be careful, watch out, [Wilkinson] can be troublesome and has some mental problems"); (J.A. at 201-02) (Britcher's testimony that when she first started working for Brinkley, Brinkley told her to "keep an eye on" Wilkinson who could be "negative"); (J.A. at 206) (Britcher testifying that as a result of the warning, she "kind of stayed away from" Wilkinson). Accordingly, the District Court erred when it determined that Wilkinson had not sought EEO counseling within 45 days of an unlawful employment practice. (J.A. at 365-66.)

---

[1]Employers are protected from unreasonably delayed hostile environment actions by equitable defenses such as waiver, estoppel, and laches. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002).

### III.

In conclusion, we reverse the District Court's grant of summary judgment for the defendant because there is evidence that components of a single hostile environment occurred within 45 days of the date on which Wilkinson sought EEO counseling.

*REVERSED AND REMANDED*