**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BURLINGTON MEDICAL SUPPLIES, INC., Defendant.**

**Civil Action No. 4:06cv122.**

United States District Court, E.D. Virginia, Norfolk Division.

March 3, 2008.

Amy E. Garber, Esquire, Equal Employment Opportunity Commission, Norfolk, VA, Tracy Hudson Spicer, Esquire, Equal Employment Opportunity Commission, Washington, DC, for Equal Employment Opportunity Commission.

David C. Burton, Esquire, Melissa L. Saunders, Esquire, Sara B. Rafal, Esquire, Williams Mullen, Virginia Beach, VA, for Burlington Medical Supplies, Inc.

## *OPINION*

WALTER D. KELLEY, JR., District Judge.

The Equal Employment Opportunity Commission ("EEOC") initiated this sexual harassment and hostile work environment action on behalf of charging party Georgeanna Trudil and all similarly situated females employed by Defendant Burlington Medical Supplies, Inc. ("Burlington"). Burlington has now moved for summary judgment (Docket No. 7) on the ground that an employee's perception of sexual harassment is so inherently subjective that it can never be litigated on a "pattern or practice" basis. Burlington also claims that the EEOC has not produced sufficient evidence of sexual harassment to warrant a trial.

The Court previously **DENIED** Burlington's Motion in an Order (Docket No. 18) dated November 1, 2007. This Opinion explains its decision.

### I. *Factual and Procedural Background*

Burlington manufactures and sells radiation-protective aprons for hospitals. The company maintains an office and its manufacturing plant in Newport News, Virginia. Burlington also employs sales representatives throughout the United States. Dennis Swartz and his wife, Elaine Swartz, are the co-owners of Burlington. Alan Leming is Burlington's sales manager.

Ms. Trudil, the person on whose behalf the EEOC proceeds, was employed by Burlington as a sales representative from

January 2003 to September 2003. She filed an EEOC charge on February 19, 2004, alleging the following incidents of sexual harassment:

- Mr. Swartz stated that while he was at a hotel once, "he could not even get a hooker to pick [him] up."
- Mr. Swartz referred to a woman as a "bitch" several times.
- Mr. Swartz and Mr. Leming often discussed the size of women's body parts.
- Mr. Swartz and Mr. Leming told each other lewd and offensive jokes.
- Mr. Leming often discussed his marital sex life.
- Mr. Swartz accompanied Ms. Trudil on two sales calls during which he made lewd comments about the bodies of female customers, and, on one occasion, stated that a woman was a "cunt" and "needed to get laid."
- Mr. Swartz told Ms. Trudil how much he enjoyed going to nude beaches, and commented that he watched people engage in sexual activities while at a nudist colony.
- Mr. Swartz stated that "I would love to have a midget just this high so she could just run around and just suck on me all day long."
- Mr. Swartz stated that he and his wife have an open marriage.
- Mr. Swartz commented that small breasts were "not even worth putting in his mouth" and that large breasts were "more than a mouthful."
- Mr. Swartz told Ms. Trudil that she was probably "hot" when she was younger, and that she had been a "hot fire in bed" that could "go a couple of rounds."
- Mr. Leming stated three times that he "was able to rub baby oil all over [his wife's] body and slip and slide in and out and everything else."
- Mr. Leming stated that he could "use a good blow job."
- Mr. Leming stated that everyone, including Ms. Trudil, "wanted him."
- Mr. Leming stated that he enjoyed having sex with his ex-wife because she had a "nice tight little body."
- Mr. Leming stated that a woman he saw walking down the street was probably a "good fuck."
- Mr. Leming described his stepdaughter as a little whore.

After investigating Ms. Trudil's allegations, the EEOC elected to litigate this action on her behalf. During the course of discovery, the EEOC identified in January 2007 two other women who claimed to have been sexually harassed while they worked at Burlington. One of them was Jana Grant, who was employed by Burlington from January 1997 to October 2005. She claims, inter alia, that:

- Mr. Swartz showed her a magazine from a nudist association and on another occasion showed her a drawing of a nude woman that was on his email.
- Mr. Swartz told her that he fantasized about midgets and how he would like to have a female midget under his desk while he was sitting in the chair.

The other woman identified by the EEOC in January 2007 was Cheryl DeFeo. She worked for Burlington for one year beginning in June 2002. Ms. DeFeo complains of the following incidents:

- Mr. Swartz asked about her sex life while they traveled together on a sales trip.
- Mr. Swartz called her to a hotel conference room in order to show her the exposed buttocks of a woman.

In March 2007, the EEOC identified more alleged victims of sexual harassment. One of them was Barbara Robinson, a woman who worked at Burlington as a sales representative. She will testify about the following incidents:

- Mr. Leming repeatedly referred to her house, which is painted pink, as the color of a "titty" and as the "pink pussy house."
- Mr. Leming purposely touched her breasts on several occasions.
- Mr. Swartz constantly made comments about women's breasts, told Ms. Robinson "you know what I mean, you have big ones," and often compared Ms. Robinson's breast size to that of other women.
- Mr. Swartz would talk constantly about sexually oriented topics while on sales calls with Ms. Robinson and did so even during a dinner with Ms. Robinson and her husband.

Ms. Robinson claims that these incidents occurred between December 2003 and February 2004.

Another "victim" identified by the EEOC in March 2007 was Debbie Ritchie. She was employed by Burlington from March 1999 to September 2002. Ms. Ritchie claims that the following incidents occurred while she was on the job:

- Mr. Swartz called her and another female employee over to his computer to look at a nude photo of an old wrinkled woman.
- Mr. Swartz required that Ms. Ritchie scratch his back one to two times per week while he made moaning and groaning noises.

- Mr. Swartz called his wife a "bitch."
- Mr. Swartz called Ms. Ritchie into his office, told her to raise her arms, measured her bust size, and stated "Ooh–52 inches Debbie."
- Mr. Swartz made numerous other comments about Ms. Ritchie's breast size.
- Mr. Swartz asked Ms. Ritchie three to four times about her sex life with her husband.

Tracy DeSimone is the final former Burlington employee identified by the EEOC. She asserts that the following incidents occurred at Burlington during her employment between July 2001 and May 2002:

- Mr. Swartz made numerous inappropriate comments to Ms. DeSimone about her breast size.
- Mr. Swartz approached Ms. DeSimone from behind and placed a tape measure around her chest.
- Mr. Swartz told her at least five times that he was a "breast man."
- Mr. Swartz required her to research information about nudist camps.

The EEOC seeks monetary relief for Ms. Trudil and all similarly situated women at Burlington, as well as injunctive relief and punitive damages.

## II. *Analysis* [1]

■ Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), prohibits "discriminat[ion] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." A hostile work environment due to sexual

---

1. Because the principles of summary judgment are well-established, further elucidation of those principles need not be provided here. *See Garrow v. Economos Props., Inc.,* 406 F.Supp.2d 635, 638–39 (E.D.Va.2005) (providing detailed description of summary judg-

ment principles), *aff'd,* 242 Fed.Appx. 68 (4th Cir.2007); *Taylor v. Wal–Mart Stores, Inc.,* 376 F.Supp.2d 653, 657–58 (E.D.Va.2005) (same), *aff'd,* 158 Fed.Appx. 446 (4th Cir. 2005); *Puckett v. City of Portsmouth,* 391 F.Supp.2d 423, 430–31 (E.D.Va.2005)(same).

harassment is discrimination based on sex. *See Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 64–66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To prevail under an individual claim of sexual harassment,

> A plaintiff employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the plaintiff's sex; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer.

*Spicer v. Va. Dep't of Corr.,* 66 F.3d 705, 710 (4th Cir.1995) (en banc).

■ The test outlined above contains two subjective components. First, the requisite "unwelcomeness" of the first prong necessitates a subjective inquiry. Second, the individual plaintiff's conditions of employment are not actually altered unless she "subjectively perceive[s] the environment to be abusive." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

In order to challenge sexual harassment in court, the alleged victim must file a charge of discrimination with the EEOC not later than 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1).[2] If the EEOC determines that the charge has merit, it is authorized to prosecute the case civilly.[3] The EEOC may proceed in two ways. First, it may file a pattern or practice suit under § 707 of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C.

§ 2000e–6(a). Second, § 706 of that Act provides that the EEOC may proceed on behalf of the charging party. *See* 42 U.S.C. § 2000e–5(f)(1). In this case, the EEOC has decided to proceed under both § 706 and § 707.

## A. § 707 of Title VII Authorizes the EEOC's Pattern or Practice Suit for a Sexually Hostile Work Environment

The EEOC[4] may institute an enforcement action under § 707 "[w]henever" it has "reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of the rights" protected by Title VII. 42 U.S.C. § 2000e–6(a). The only statutory limitations imposed on the EEOC for filing pursuant to § 707 are the administrative procedures in § 706. *See* 42 U.S.C. § 2000e–6(e) ("[T]he Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission. All such actions shall be conducted in accordance with the procedures in section 2000e–5 [§ 706] of this title.").

### 1. Subjective Elements of Sexual Harassment

■ As noted above, sexual harassment has two subjective components. These two components are distinct because one could find certain actions unwelcome even

---

**2.** A 120–day time period applies if the person has not instituted proceedings in the proper state or local agency. 42 U.S.C. § 2000e–5(e)(1). Both parties agree that the 300–day time period applies here.

**3.** If the EEOC declines, it may still find in favor of the charging party and issue a "right to sue" letter, *see* 42 U.S.C. § 2000e–5(f)(1), which has no evidentiary effect in federal

court. If the EEOC finds the case lacks merit, it still issues a right to sue letter that merely certifies the administrative process has been followed. *See id.*

**4.** Although § 2000e–6(a) speaks of the Attorney General bringing an enforcement action, § 2000e–6(c) transferred this function to the EEOC after March 24, 1974.

though they were not sufficiently severe or pervasive enough to actually alter one's work environment. "Conduct that a particular plaintiff subjectively regards as unwelcome, but trivial, is not actionable by that plaintiff even if, viewed objectively, it is severe or pervasive." I Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* 1345 (4th ed.2007). Otherwise, "the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367.

■ Burlington argues that these subjective elements make a sexual harassment claim unsuitable for a pattern or practice enforcement action brought pursuant to § 707. Although it admits that there is no controlling authority for this proposition, Burlington points to cases denying certification of sexually hostile work environment claims under Fed.R.Civ.P. 23 to support its argument that sexual harassment is "unsuited for class or pattern or practice treatment." (Def's. Reply Mem. 3.) The Court concludes otherwise for two reasons.

■ First, the courts consistently have held that government enforcement actions need not comply with Rule 23 even though they affect groups of individuals.[5] *See generally* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.04 (3d ed.2007) (citing cases). It is well established that Fed.R.Civ.P. 23 does not apply to the EEOC when it proceeds under § 706. *General Tel. Co. v. EEOC,* 446 U.S. 318, 324, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). The same reasoning applies to § 707. Tellingly, the only courts to consider whether the EEOC may bring a pattern or practice suit for sexual harass-

ment have answered in the affirmative and have not applied Fed.R.Civ.P. 23. *See, e.g., EEOC v. Mitsubishi Motor Mfg. of Am., Inc.,* 990 F.Supp. 1059, 1070 (C.D.Ill. 1998); *EEC v. Foster Wheeler Constructors, Inc.,* No. 98 C 1601, 1999 WL 528200, at *2 (N.D.Ill. July 13, 1999); *EEOC v. Dial Corp.,* 259 F.Supp.2d 710, 711 (N.D.Ill.2003).

Other courts have also encountered the question of whether a hostile work environment claim may be adjudicated as a class action under Fed.R.Civ.P. 23. Although some courts have found certification inappropriate, *see* II Lindemann & Grossman, *supra,* at 2109 n. 47 (citing cases), an across-the-board rule that a sexually hostile work environment claim may *never* satisfy Fed.R.Civ.P. 23 has been rejected. *See, e.g., Warnell v. Ford Motor Co.,* 189 F.R.D. 383, 386–88 (N.D.Ill.1999) ("Ford argues in effect that no sexual harassment case can be maintained as a class action. This is a bold and striking claim, but one quite without merit."); *see also* II Lindemann & Grossman, *supra,* at 2109 n. 46 (citing district courts that have granted class certification for hostile work environment claims).

Second, the text and structure of Title VII do not prevent the EEOC from bringing an enforcement action pursuant to § 707 merely because a hostile work environment claim due to sexual harassment includes subjective elements. "The 'pattern or practice' language in § 707(a) of Title VII was not intended as a term of art, and the words reflect only their usual meaning." *Teamsters v. United States,* 431 U.S. 324, 336–37 n. 16, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (citation omitted).

5. Only the EEOC can bring a pattern and practice enforcement action. Private plaintiffs who assert a pattern and practice of discrimination must satisfy the requirements of Fed.R.Civ.P. 23. *See Davis v. Coca–Cola Bottling Co.,* 516 F.3d 955, 964–65 (11th Cir. 2008).

Accepting Burlington's argument-that an element of subjectivity precludes a pattern or practice enforcement action-would have far reaching consequences for all hostile work environment claims, not just those alleging sexual harassment. For example, "[h]ostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n. 10, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (citations omitted). Under this rationale, the EEOC would be powerless to bring an enforcement action pursuant to § 707 for a racially hostile work environment. The Fourth Circuit has already rejected a similar argument that racial "harassment and retaliation claims are not susceptible of class treatment because they are too individualized." *Holsey v. Armour & Co.*, 743 F.2d 199, 216–17 (4th Cir.1984).

Limiting the EEOC to § 706 whenever the underlying claim includes a subjective element would undermine Title VII's mandate. The Court concludes, therefore, that a pattern or practice enforcement action for a hostile work environment due to sexual harassment is available under Title VII.

## 2. Order of Proof

Having established that Title VII permits the EEOC to prove a sexually hostile work environment through the pattern or practice model, the Court must decide the order of proof at trial. *See Mitsubishi*, 990 F.Supp. at 1071 ("The question ... is not whether a pattern or practice action for sexual harassment can be brought at all, but rather how such a pattern or practice case can be tried and proven, given the unique element of subjectivity found in a sexual harassment claim."). All courts to consider the issue have divided the trial into two phases.[6] In Phase I, the EEOC must demonstrate by a preponderance of the evidence that the work environment was objectively hostile. The courts are split, however, on the question whether the burden of production on the subjective elements of the claim remains with the EEOC during Phase II—which focuses on individual relief for class members.

### (a) The *Jenson* Approach

In *Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 875 (D.Minn.1993), the United States District Court for the District of Minnesota considered the legal standards applicable to a class-wide[7] sexually hostile work environment claim. The court observed:

> In the usual "pattern or practice" case ... a determination in the liability phase that the employer engaged in a pattern or practice of discrimination entitles the plaintiff class to appropriate prospective relief and entitles each member of the class to a presumption that the employer unlawfully discriminated against her.... Thus, in the recovery phase the burden

**6.** In *Dial*, 259 F.Supp.2d at 713–15, the district court added a third and fourth phase to consider issues relating to punitive damages. Otherwise, the court endorsed the *Mitsubishi* model discussed below. *See EEOC v. Dial Corp.*, 156 F.Supp.2d 926, 947 (N.D.Ill.2001).

**7.** Despite the inapplicability of Rule 23 to § 707, the Court finds it convenient to refer to the group of women eligible for relief as the "class." *See, e.g., EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 102 F.3d 869, 869 (7th Cir.1996) (Easterbrook, J.) ("Like a class action under Fed.R.Civ.P. 23(b)(3), [a] suit [under § 707] can produce monetary remedies for injured persons, but the EEOC is not their 'representative,' and the district court need not certify a class. For many purposes, however, a pattern-or-practice suit operates as a class action, and we follow the parties' convention in referring to the approximately 600 women potentially eligible for relief as the 'class.' ")

of persuasion shifts to the employer to show that it did not discriminate against individual members of the class who show that they are potential victims of the proved discrimination. . . .

*Id.* Imposing this procedure in a sexually hostile work environment claim, according to the court, was inappropriate because "a presumption that the employer discriminated against individual class members may not arise from a determination that the reasonable woman would have been affected." *Id.* at 876. This is because the "*employee's* subjective response to the acts of sexual harassment is an essential part of proving [the] claim." *Id.* (emphasis in original). Otherwise, "individual employees . . . [would] be allowed to circumvent an essential element of a hostile work environment claim merely because they are permitted to pursue their claims as a class." *Id.* The *Jenson* court therefore held that the class could establish a pattern or practice of sexual harassment in Phase I by demonstrating that the acts needed to satisfy the subjective elements would have affected the "reasonable woman," but declined to extend a presumption to individual class members in Phase II. *Id.* The United States Court of Appeals for the Eighth Circuit ultimately endorsed the district court's finding of pattern or practice liability under this approach, but remanded for reconsideration of compensatory and punitive damages claims. *Jenson v. Eveleth Taconite Co.,* 130 F.3d 1287, 1291, 1304 (8th Cir.1997).

#### (b) The *Mitsubishi* Approach

In *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.,* 990 F.Supp. 1059, 1073 (C.D.Ill. 1998), the United States District Court for the Central District of Illinois concurred in the *Jenson* court's holding that Phase I should focus on establishing a hostile work environment through a purely objective inquiry. The court held that "[i]f a compa-

ny engages in a pattern or practice which is proved by an objective test . . . then the EEOC can and should be able to obtain injunctive relief, regardless of whether some of the individuals may have no subjective objection to the harassing conduct." *Id.*

The *Mitsubishi* court also agreed with the *Jenson* court that shifting the burden of proof to the defendant after the EEOC demonstrates a prima facie case would be an inappropriate extension of the pattern or practice model to hostile work environment claims:

Shifting a burden of proof does not work in a pattern or practice action for sexual harassment, because individual relief for sexual harassment . . . still requires a plaintiff to prove that she was subjectively harmed by the harassing conduct. . . . Proof of subjective harm is not relevant to the pattern or practice case and cannot be admitted at Phase I. Therefore, to presume liability and shift the burden of proof to an employer in Phase II, without requiring an individual to make her subjective showings, would presume away an individual's burden of proof on elements essential to the establishment of individual liability for sexual harassment. . . .

*Id.* at 1077. However, the court determined that shifting the burden of *production* was appropriate. *Id.* at 1078. Otherwise, the individual cases would be "effectively disassociate[d from] the pattern or practice case . . . so that there would be no benefit . . . from a pattern or practice finding." *Id.*

An individual plaintiff need only testify that "she found the alleged conduct to be hostile or abusive" to satisfy the subjective elements of a sexually hostile work environment claim. *Id.* It then becomes the employer's burden to come forward with

evidence demonstrating the conduct was welcomed. The *Mitsubishi* court therefore reasoned, "[t]he burden of coming forward with evidence to challenge the plaintiff's assertion that the alleged harassment was 'unwelcome' has always been on the employer." *Id.* Shifting the burden of production is "consistent with the realistic expectation that it is the employer, not the female employee, who will be in the best position to produce such evidence." *Id.* at 1079. However, in the absence of an employer's individual defense, "one can 'presume' from an objective pattern or practice finding that the working environment, as a whole, is hostile, and that most women would also find such an environment subjectively hostile." *Id.* (footnote omitted).

Based on the foregoing, the *Mitsubishi* court concluded that the goal of Phase II is "to determine which of the women are actually part of the 'affected class.'" *Id.* at 1079 (*citing Teamsters*, 431 U.S. at 331 n. 6, 97 S.Ct. 1843). The burden of production therefore should shift "to the employer on the subjective prong" to prove the conduct was welcomed. *Id.* at 1078. Nevertheless, the ultimate burden of persuasion rests "on those class members who have been challenged with elimination" from the affected class-they must persuade "the trier of fact that they were subjectively affected." *Id.* at 1081.

### (c) This Court's Approach

■■■ This Court finds the *Mitsubishi* burden-shifting approach persuasive and consistent with Title VII. The Court therefore concludes that in Phase I, the EEOC must demonstrate harassment that is (1) based on sex; (2) sufficiently severe or pervasive to alter the terms or conditions of a reasonable person's employment and to create an abusive work environment; (3) unwelcome from the standpoint of a reasonable woman; and (4) imputable on

some factual basis to the employer. *Cf. Jenson*, 824 F.Supp. at 876; *Spicer*, 66 F.3d at 710; *Mitsubishi*, 990 F.Supp. at 1073. Demonstrating a pattern or practice of sexual harassment in this manner may entitle the EEOC to appropriate declaratory and injunctive relief authorized by Title VII. *See* 42 U.S.C. § 2000e-5(g)(1). In Phase II, the burden of *production* shifts to Burlington to demonstrate a former employee seeking individual relief welcomed the sexually harassing conduct. *See Mitsubishi*, 990 F.Supp. at 1079. To recover damages for an individual, however, the EEOC must carry the ultimate burden of proving that the sexual harassment was unwelcome to the individual for whom relief is sought and that the individual subjectively found the harassment so severe or pervasive as to alter her employment and create an abusive work environment. *Cf. Harris*, 510 U.S. at 22, 114 S.Ct. 367 (holding Title VII allows recovery "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile or abusive") (*citing Meritor*, 477 U.S. at 67, 106 S.Ct. 2399).

### 3. The Statute of Limitations Limits Recovery in Phase II but Does Not Bar Testimony in Phase I

Burlington argues that the EEOC cannot recover monetary damages for Ms. Ritchie, Ms. DeSimone, and Ms. DeFeo because their allegations involve conduct that occurred more than 300 days prior to February 19, 2004, i.e., the date Ms. Trudil filed her charge with the EEOC. There is no dispute that Ms. Ritchie and Ms. DeSimone were no longer employed by Burlington at this time, and Ms. DeFeo admits that she did not experience any harassment after March 2003.

The EEOC argues that the ability to seek relief for a class is inherent to its role as an agency charged with enforcing Title

VII. Because this case presents a "continuing violation," the EEOC asserts that the Court should follow the lead of the *Mitsubishi* and *Dial* cases and hold that no statute of limitation should limit recovery for any member of the class. *See Mitsubishi,* 990 F.Supp. at 1084–88; *Dial,* 156 F.Supp.2d at 968. Although the Supreme Court has held that individual hostile work environment claims are timely when at least one component incident occurs within the 300–day filing period, it has not addressed the continuing violation doctrine in the context of pattern or practice cases. *See Morgan,* 536 U.S. at 115 n. 9, 122 S.Ct. 2061 ("We have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims....").

Although this Court found the *Mitsubishi* and *Dial* cases persuasive in determining whether sexual harassment can be proven through the pattern or practice model, it disagrees with their holding on the statute of limitations. Accepting the EEOC's argument would contravene the text of the statute and frustrate the legislative policies behind Title VII.

Section 707 of Title VII provides that all pattern or practice actions "shall be conducted in accordance with the procedures set forth in section 2000e–5 [§ 706] of this title." 42 U.S.C. § 2000e–6(e). "Rules regarding statutes of limitations are paradigmatic 'procedures.' Thus a literal reading of the text would indicate that pattern or practice suits under § 2000e–6(e) 'shall be conducted in accordance with the' " applicable limitations period prescribed in § 706. *EEOC v. Optical Cable Corp.,* 169 F.Supp.2d 539, 546 (W.D.Va. 2001).

Judge Jackson Kiser of the United States District Court for the Western District of Virginia has commented on the conflict between the statute of limitations and the nature of a pattern or practice case. *Id.* He stated, "[b]y definition, a pattern and practice of discrimination will always constitute a continuing violation. Thus, we have a statute of limitations that applies to pattern and practice cases, but because of the court-made continuing violation doctrine, the statute is nullified." *Id.* at 549. The EEOC asks this Court to sanction this nullification because "an employer that maintains a continuing violation neither deserves nor obtains repose." (Pl.'s Mem. Opp. Summ. J. 22 (*citing Dial,* 156 F.Supp.2d at 968)). However, the Supreme Court recently observed that the courts must be "[r]espectful of the legislative process that crafted" the filing deadlines and "repeatedly rejected suggestions that [a court] extend or truncate Congress' deadlines." *Ledbetter v. Goodyear Tire & Rubber Co.,* —— U.S. ——, ——, 127 S.Ct. 2162, 2170, 167 L.Ed.2d 982 (2007).

■■■ The EEOC's special statutory mandate does not entitle it to "expand substantive rights, such as reviving stale claims" that would not otherwise be actionable under Title VII. *See EEOC v. Custom Cos.,* Nos. 02 C 3768, 03 C 2293, 2004 WL 765891, at *10–11 (N.D.Ill. Apr. 7, 2004). On the contrary, the EEOC's ability to secure enforcement of Title VII on behalf of the public is primarily served through its ability to secure injunctive relief, not bootstrapping individual damage claims into the EEOC's enforcement action. *Id.* The Court therefore holds that only those class members experiencing injury within the 300–day limitations period will be entitled to individual relief at trial. The only former Burlington employee that satisfies this requirement is Ms. Trudil, Ms. Gant and Ms. Robinson.

■■■■ Although Ms. Ritchie, Ms. DeSimone, and Ms. DeFeo may not recover damages in Phase II, evidence of the sexual harassment they allegedly experienced

nonetheless may be introduced in Phase I of the trial.

[A] hostile environment claim involves one unlawful employment practice that can be comprised of a series of separate incidents. As long as one component incident occurred within the applicable limitations period, every component incident of the hostile environment may be considered for purposes of liability regardless of when those events occurred.

*Wilkinson v. Rumsfeld,* 100 Fed.Appx. 155, 158 (4th Cir.2004) (internal citation omitted) (*citing Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)); *accord White v. BFI Waste Servs., LLC,* 375 F.3d 288, 293 (4th Cir.2004); *Gilliam v. S.C. Dep't of Juvenile Justice,* 474 F.3d 134, 142 (4th Cir.2007).

### 4. Each Woman Testifying in Phase I Need Not, By Herself, Present a Prima Facie Case

▆▆▆▆ Burlington also argues that, in order to present testimony that sexual harassment was its standard operating procedure, each affected woman must be able to present a prima facie case by herself. However, the Supreme Court rejected this position in *Franks v. Bowman,* 424 U.S. 747, 772, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). The Court held that each plaintiff need not individually prove all elements of disparate treatment in order to establish an overall pattern or practice of discrimination. *Id.* Because a pattern or practice case focuses on the employer's policy as it affects the total working environment, Burlington may not balkanize each woman's individual experience to prevent the aggregate impact from rising to a Title VII violation. As the district court in *Mitsubishi* aptly observed:

An individual's personal experience of sexual harassment is part of the larger context in which she works. Although she may be the target of only one or two incidences of harassment by an individual, these incidences are part of a pattern of conduct by the employer that is actionable. The individual claimant is, therefore, not only a victim of the individual acts of discrimination perpetrated by the harasser within the plant, but she is also the victim of a systemic policy of tolerance by the company. It is this systemic policy, together with the individual acts of harassment, for which the employer is liable in Phase II, because it is the policy which makes the perpetration of the individual conduct possible.

990 F.Supp. at 1081. Courts must scrutinize the totality of the circumstances "of the entire hostile work environment and refrain from carv[ing] the work environment into a series of discrete incidents and then measur[ing] the harm occurring in each episode." *Burns v. McGregor Elec. Indus.,* 955 F.2d 559, 564 (8th Cir.1992), *rev'd on other grounds,* 989 F.2d 959 (8th Cir.1993).

### 5. A Reasonable Jury Could Conclude Burlington's Alleged Conduct Was Severe or Pervasive Under § 707

▆▆▆ Burlington argues that its alleged conduct, even if proven at trial, was not severe or pervasive enough to demonstrate a pattern or practice of sexual harassment. "The 'severe or pervasive' element has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 333 (4th Cir.2003) (*citing Harris,* 510 U.S. at 21–22, 114 S.Ct. 367). Burlington disputes the objective component of the test.

▆▆▆▆ To determine whether the work environment was objectively hostile, "we consider all of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (*citing Harris*, 510 U.S. at 23, 114 S.Ct. 367). In order to prevail on this element in a pattern or practice case, a reasonable jury must be able to find that the conduct alleged was Burlington's "standard operating procedure [—] the regular rather than the unusual practice." *See Teamsters*, 431 U.S. at 336, 97 S.Ct. 1843.

▇▇▇ Although "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace," *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir.1996), and it is not a "federal guarantee of refinement and sophistication in the workplace," *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773–74 (4th Cir.1997), the recurring acts of Mr. Swartz and Mr. Leming, if proven, suggest that Burlington was the sort of environment that was "hellish for women," and rose above "the ordinary tribulations of the workplace." *Ocheltree*, 335 F.3d at 333 (internal quotation marks and citation omitted). Without restating all of the facts described above, a jury reasonably could conclude that women were repeatedly subjected to objectifying discussions of their private body parts, lewd jokes, offensive language, inappropriate sexual inquiries, and opportunistic groping. This case is unlike *Hartsell*, 123 F.3d at 773, where the court found that four isolated remarks were insufficient to create a jury question of severity or pervasiveness. The multiple incidents alleged by all six women suggest that this conduct was Burlington's regular, rather than unusual, practice.

Burlington's attempt to explain Mr. Swartz's measurement of Ms. Ritchie and Ms. DeSimone's breasts by arguing there was a valid business justification (demonstrating "proper" technique for fitting a radiation-protective apron) simply illustrates that the facts surrounding the "severe or pervasive" element are in dispute. A jury can best decide whether Mr. Swartz's alleged business justification was essentially a pretext for sexual harassment. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 243 (4th Cir.2000) ("[W]hether harassment was sufficiently severe or pervasive is 'quintessentially a question of fact' for the jury" (*citing Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir.1994))).

### B. The EEOC Has Presented a Prima Facie Case Under § 706

▇▇▇ Because the EEOC proceeds under § 706 on behalf of Ms. Trudil, it must demonstrate she has a prima facie case for a hostile work environment due to sexual harassment. *See Spicer*, 66 F.3d at 710. The Court is satisfied that the EEOC has done so for purposes of summary judgment.

First, the EEOC has alleged and supported with statements from Ms. Trudil's deposition that Burlington's conduct was unwelcome. Burlington does not contest this.

▇▇▇ Second, the EEOC has supported its allegations that Mr. Swartz and Mr. Leming treated Ms. Trudil the way they did because of her sex. The EEOC has provided examples of sexual conduct directed towards her and evidence of generally abusive behavior toward women (including Ms. Trudil) that was not similarly directed toward men. Burlington argues that gender-based animosity not clearly sexual in nature is outside Ms. Trudil's charge and therefore should be disregarded. This Court will not "divid[e] conduct into instances of sexually oriented conduct and instances of unequal treatment, then discounting the latter category of conduct, thereby robbing instances of gender-based

harassment of their cumulative effect." *See Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 810–11 (7th Cir.2001). Furthermore, the EEOC's lawsuit must be supported by "any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC." *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 366 (4th Cir.1976). This requirement has been satisfied here because sexual harassment includes conduct inflicted because of the victim's gender. Sexual harassment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult," *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (internal quotation marks and citation omitted), and is not always based necessarily on sexual connotation, but rather on "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80, 118 S.Ct. 998. "[H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Id.; see also Berry*, 260 F.3d at 810–11.

Third, the EEOC has forecast enough evidence to survive summary judgment for the "severe or pervasive" element of Ms. Trudil's charge.[8] Burlington contends that a reasonable woman would not have found

its conduct so severe or pervasive as to actually alter her working environment. The Court concludes that this case is not unlike other cases in which the Fourth Circuit has found the "severe or pervasive" standard satisfied. For example, in *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 459 (4th Cir.2002), the court found that a female who "was subjected, on a daily basis, to verbal assaults of the most vulgar and humiliating sort" had "unquestionably" submitted sufficient evidence to reach a jury. Similarly, in *EEOC v. R & R Ventures*, 244 F.3d 334, 340 (4th Cir.2001), the Fourth Circuit concluded that the work environment was sufficiently severe or pervasive when a female employee was subjected to inappropriate sexual remarks and comments about her breasts and buttocks on a daily basis. *See also Smith*, 202 F.3d at 243 (observing severity and pervasiveness is " 'quintessentially a question of fact' for the jury" (*quoting Beardsley*, 30 F.3d at 530)).

Fourth, the EEOC has demonstrated that the conduct of Mr. Swartz and Mr. Leming, as President and Vice–President of the company, respectively, was imputable to Burlington under common law agency principles.

**C.   The *Faragher–Ellerth* Affirmative Defense Does Not Entitle Burlington to Summary Judgment**

 ▮▮▮▮  Burlington attempts to invoke the *Faragher–Ellerth* affirmative defense,

---

**8.**  It is unclear whether, in the Fourth Circuit, harassing conduct directed at other members of Ms. Trudil's protected class may be relied on to demonstrate severity or pervasiveness. This Court relies only on conduct directed at Ms. Trudil even though some circuits have accepted third-party evidence if it affected the plaintiff. *See, e.g., Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1015 (8th Cir.1988) (sexual harassment directed at employees other than plaintiff was relevant to the question of severity and pervasiveness); *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 190 (2d Cir.2001)

("Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim.") (internal quotation marks and citation omitted). *But see Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir.2002) (" '[S]econdhand' harassment is obviously not as great as harassment directed toward [the plaintiff] herself").

because it allegedly maintained a policy against sexual harassment that provided a process for complaints. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The *Faragher–Ellerth* defense is ostensibly available to an employer "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee" in the absence of a "tangible employment action." *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257.

■■■ Relying on the *Faragher–Ellerth* defense, Burlington contends that it cannot be held liable for the alleged incidents of sexual harassment because the claimants never filed formal complaints. However, this defense is not available as a shield from liability for harassing conduct that is performed by owners, such as Mr. Swartz. *Faragher,* 524 U.S. at 789–90, 118 S.Ct. 2275. He is essentially a proxy for the company. *See id.*

Burlington cites *EEOC v. Bud Foods, LLC,* Civil Action No. 5:04CV156, 2006 WL 2265291, at *12 (W.D.N.C. Aug. 7, 2006), for the proposition that the "proxy" theory adopted above has not been endorsed by the Supreme Court. The district court in that case stated, "although the *Faragher* Court commented on the proxy doctrine, this reference was limited to a historical context and was not mentioned within the holding of the *Faragher* decision." *Id.* (*citing Faragher,* 524 U.S. at 789, 118 S.Ct. 2275).

To characterize the Supreme Court's discussion of the "proxy" doctrine as mere historical commentary is an insufficient basis on which to disavow the theory. The Supreme Court's "historical" discussion arose in the context of justifying the absence of standards for imputing liability to the employer in *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 19, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). *Faragher,* 524 U.S. at 789, 118 S.Ct. 2275. The *Faragher* Court explained that it was not "exceptional" that these standards were not at issue in *Harris* because, "the individual charged with creating the abusive atmosphere was the president of the corporate employer, who was indisputably within that class of an employer organization's officials who may be treated as the organization's proxy." *Id.* (citations omitted). After its discussion of the proxy theory, the Court noted that *Meritor Savings Bank* put its imprimatur on the "soundness of the results in these cases (and their continuing vitality)." *Id.* at 791. Then the Court announced, "*Meritor's* statement of the law is the foundation on which we build today." *Id.* at 792, 118 S.Ct. 2275.

As outlined above, the *Faragher* Court expressly acknowledged the validity of the proxy theory and refused to abrogate the doctrine in its holding. Accordingly, the *Faragher–Ellerth* affirmative defense is not available for Mr. Swartz's conduct,[9] which is directly imputable to Burlington.

---

**9.** The *Faragher–Ellerth* affirmative defense does not entitle Burlington to summary judgment for claims related to Mr. Leming's conduct because Burlington concedes that the women he allegedly harassed (Ms. Trudil and Ms. Robinson) did not receive copies of Bur-

### III. *Conclusion*

For the reasons set forth above, the Court previously entered an Order (Docket No. 18) **DENYING** Burlington's Motion for Summary Judgment.

The Clerk is **DIRECTED** to forward a copy of this Opinion to all counsel of record.

**IT IS SO ORDERED.**

lington's sexual harassment policy (Def's Reply Mem. Supp. Summ. J. 17, 18).